**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK WARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 10911 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| LEVY PREMIUM FOOD SERVICE | ) | |
| LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant Levy Premium Food Service Limited Partnership ("Levy") employed Plaintiff Patrick Ware to provide food and beverage services at the Field Museum of Natural History in Chicago, Illinois. Levy terminated Ware in August 2024, although it reinstated his employment the following month. Ware filed this lawsuit against Levy, complaining that Levy engaged in sex discrimination when it terminated him and then later assigned him fewer hours to work in retaliation for his complaints about sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Levy filed a motion to dismiss or alternatively stay the proceedings pursuant to an arbitration agreement. Because the parties entered into an enforceable arbitration agreement, the Court compels arbitration and stays this case pending the outcome of the arbitration.

## BACKGROUND

Ware began working for Levy in 2024, providing food and beverage service at the Field Museum of Natural History in Chicago. In August 2024, a Levy manager terminated Ware for an alleged verbal altercation. Ware complained to Levy that the decision to terminate him instead of issue lesser discipline resulted from sex discrimination. In September 2024, Levy

informed Ware that it reinstated his employment, noting that the manager who had terminated Ware told Levy that Ware had resigned. But Levy did not assign Ware to work any hours until November 2024, and, even then, Levy assigned him fewer hours and to a less appealing position. This caused Ware to lose income. Ware alleges that Levy engaged in sex discrimination and retaliation in violation of Title VII.

In connection with his employment, Ware signed a Mutual Arbitration Agreement (the "Arbitration Agreement") on May 1, 2024. The Arbitration Agreement provides:

> I and [Levy] mutually agree to use binding individual arbitration as the sole and exclusive means to resolve all legal claims between us, including without limitation those that may arise out of or be related to my employment, compensation, or termination of employment, except as provided below.
>
> . . . .
>
> Except as provided below, any claim, dispute, and/or controversy that I may have against [Levy], or that [Levy] may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Except as carved out below, "claim, dispute, and/or controversy" includes, but is not limited to, any claims of alleged discrimination, harassment, or retaliation; . . . and any other federal, state, or local statute, ordinance, executive order, regulation or any amendments thereto or any other legal theory. If for any reason arbitration is unavailable under the FAA, then the law of the state in which I last worked for [Levy] shall govern this Agreement. The FAA applies to this Agreement because my employer's business involves interstate commerce.
>
> . . . .
>
> The only exceptions to the requirement of binding arbitration are claims: (a) arising under the National Labor Relations Act that are brought before the National Labor Relations Board; (b) for workers' compensation, unemployment, or medical or disability benefits under a plan that provides its own process for dispute resolution (although claims for retaliation are covered by this Agreement); (c) by either party seeking only a provisional remedy in any court of competent jurisdiction; (d) claims for which this Agreement would be invalid as a matter of federal law, or state or

2

local law that is not preempted by federal law; and (e) sexual harassment and/or sexual assault disputes as defined by the FAA unless I voluntarily elect to submit such disputes to arbitration.

. . . .

Nothing herein shall prevent me from filing and pursuing proceedings before the United States Equal Employment Opportunity Commission or similar state or local agency, but if I pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to arbitration, except as carved out above.

. . . .

***I may opt out of this Agreement by sending written correspondence*** via certified mail . . . clearly and unambiguously indicating that I opt out of the Agreement. This correspondence must be received within 30 days of executive of this Agreement, and if not, this Agreement is binding.

Doc. 7-1 at 7–9.

## LEGAL STANDARD

Section 3 of the Federal Arbitration Act ("FAA") requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses, such as fraud, duress, and unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The party seeking to avoid arbitration bears the burden of establishing why the

3

Court should not enforce the arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

## ANALYSIS

Levy argues that the Arbitration Agreement requires the Court to compel arbitration. Ware does not dispute that he signed the Arbitration Agreement, but he contends that the Arbitration Agreement is not enforceable under the Illinois Workplace Transparency Act ("IWTA"), 820 Ill. Comp. Stat. 96/1-1 *et seq.* The IWTA seeks "to ensure that all parties to a contract for the performance of services understand and agree to the mutual promises and consideration therein, and to protect the interest of this State in ensuring all workplaces are free of unlawful discrimination, harassment, and violations of State or federal employment laws." 820 Ill. Comp. Stat. 96/1-5. As relevant here, the IWTA states:

> Any agreement, clause, covenant, or waiver that is a unilateral condition of employment or continued employment and requires the employee or prospective employee to waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit related to an unlawful employment practice to which the employee or prospective employee would otherwise be entitled under any provision of State or federal law, including that which purports to shorten the applicable statute of limitation, apply non-Illinois law to an Illinois employee's claim, or require a venue outside of Illinois to adjudicate an Illinois employee's claim, is against public policy, void to the extent it denies an employee or prospective employee a substantive or procedural right or remedy related to alleged unlawful employment practices, and severable from an otherwise valid and enforceable contract under this Act.

820 Ill. Comp. Stat. 96/1-25(b). The IWTA defines a unilateral condition of employment as "any contract, agreement, clause, covenant, or waiver an employer requires an employee or prospective employee to accept as a non-negotiable material term in order to obtain or retain employment." 820 Ill. Comp. Stat. 96/1-15. Ware argues that the Arbitration Agreement amounts to a unilateral condition of employment that cannot survive the IWTA. Levy contends,

4

however, that the FAA preempts the IWTA and so the Arbitration Agreement remains enforceable.

As the Supreme Court reiterated in *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim," the FAA "displace[s]" the state law. *Concepcion*, 563 U.S. at 341; *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The FAA's displacement of conflicting state law is now well-established and has been repeatedly reaffirmed." (citations omitted) (internal quotation marks omitted)). The FAA also preempts generally applicable state laws that can be "applied in a fashion that disfavors arbitration" where the law has a "disproportionate impact on arbitration agreements" and "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 342–43. In other words, "state laws may invalidate arbitration agreements only to the extent they rely on generally applicable contract defenses, such as fraud, duress, or unconscionability." *Bergman v. Best Buy Co.*, No. 25-CV-1318, 2026 WL 279288, at *8 (S.D. Ill. Feb. 3, 2026) (citing *Concepcion*, 563 U.S. at 339).

Here, the IWTA's prohibition on unilateral agreements to arbitrate claims related to unlawful employment practices "falls squarely into the first category" of preempted claims because it "categorically prohibits 'the arbitration of a particular type of claim.'" *Jennings v. Ed Napleton Elmhurst Imports Inc.*, No. 1:23-cv-14099, 2025 WL 461433, at *9 (N.D. Ill. Feb. 11, 2025) (citation omitted); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (FAA preempted state law that prohibited agreements to arbitration personal injury and wrongful death claims against nursing homes). The FAA therefore preempts the IWTA, meaning that Ware cannot invoke the IWTA to prevent arbitration of his claims. *Bergman*, 2026

5

WL 279288, at *8; *Jennings*, 2025 WL 461433, at *9. Because this is the only defense to arbitration that Ware raises, the Court finds the Arbitration Agreement enforceable.

Finally, the Court must decide whether to dismiss or stay the case while Levy pursues his claims in arbitration. Levy argues that the Court should dismiss the case under Federal Rule of Civil Procedure 12(b)(3) as brought in the improper venue. But the Seventh Circuit has made clear that an arbitration agreement's enforcement does not amount to a challenge to the proper venue and that courts should instead stay cases pending the completion of arbitration proceedings. *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.*, 104 F.4th 978, 984 (7th Cir. 2024). "Venue is determined solely by reference to federal law—generally 28 U.S.C. § 1391—not the parties' contractual agreements." *Id.* (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013)). Because the Court has no basis to dismiss the action for lack of venue, the Court denies Levy's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). The Court instead stays these proceedings pursuant to § 3 of the FAA. *See* 9 U.S.C. § 3 (requiring courts to stay proceedings if they find a suit appropriate for arbitration).

## CONCLUSION

For the foregoing reasons, the Court grants in part Levy's motion to dismiss or alternatively stay the proceedings [7]. The Court compels arbitration of Ware's claims and stays this case during the pendency of the arbitration.

Dated: April 14, 2026

SARA L. ELLIS
United States District Judge

6